**Case No. 24-50989**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

In the Matter of: Metropolitan Water Company, L.P., Debtor

Dallas Water Alliance Associates, Limited, Creditor; Keller Shoreline Investments, Limited; Paul Keller; Greg Attwood; Francis R. Reissig, Jr.,

     Appellants,

v.

Metropolitan Water Company, L.P., Debtor; Stephen W. Sather, Trustee; Blue Water Systems, L.P., Creditor; Blue Water Vista Ridge, L.L.C., Creditor; Austin JSB, Limited, Creditor; Fox River Real Estate Holdings, Incorporated, Creditor; M. Buckner Baccus, Creditor; Daniel T. Cooper, Creditor; Ross M. Cummings, Creditor; Warren Demaio, Creditor; Bruce F. Dickson, Creditor; Keith K. Dickson, Creditor; Eugene A. Frost, Jr., Creditor; Mark A. Frost, Creditor; August J. Pellizzi, Creditor,

     Appellees.

---

On Appeal from
the United States District Court
for the Western District of Texas, Austin Division

---

**BRIEF OF APPELLANTS**

---

SUBMITTED BY:

**STREUSAND, LANDON, OZBURN
& LEMMON LLP**

Richard D. Villa
State Bar No. 24043974
Sabrina L. Streusand
State Bar No. 11701700
1801 S. MoPac Expressway, Suite 320
Austin, TX 78746
(512) 236-9900
(512) 236-9904 (Fax)
streusand@slollp.com
villa@slollp.com

**COUNSEL FOR APPELLANTS DALLAS WATER ALLIANCE
ASSOCIATES, LTD. AND GREG ATTWOOD**

Kell C. Mercer
State Bar No. 24007668
kell.Mercer@mercer-law-pc.com
Kell C. Mercer, P.C.
901 S Mopac Expy, Bldg 1, Suite 300
Austin, Texas 78746
(512) 627-3512
(512) 597-0767 (fax)

**ATTORNEY FOR APPELLANTS PAUL KELLER AND SHORELINE
INVESTMENTS, LTD.**

C. Daniel Roberts
Texas Bar No.: 16999200
C. DANIEL ROBERTS, P.C.
PO Box 300549
Austin, Texas 78702
Telephone: (512) 470-0897
droberts@cdrlaw.net

**ATTORNEY FOR APPELLANT FRANCIS R. REISSIG, JR**

## **CORPORATE DISCLOSURE STATEMENT**

No parent corporation or publicly held corporation owns 10% or more of the membership interests in Appellant Dallas Water Alliance Associates, Ltd., or Appellant Keller Shoreline Investments, Ltd.

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellants certify that the following listed persons and entities, as described in the fourth sentence of 5th Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **<u>Appellants</u>:**

   Dallas Water Alliance Associates Ltd.; Keller Shoreline Investments Ltd.; Greg Attwood; Paul Keller; Francis R. Reissig, Jr.

2. **<u>Appellees</u>:**

   Metropolitan Water Company, L.P.; Stephen W. Sather, Subchapter V Trustee; Met Water Vista Ridge, L.P.; Blue Water Systems, L.P.; Blue Water Vista Ridge, LLC; Blue Water 130 Project, LP; Metropolitan Water Company of Texas L.L.C.; Carrizo-Wilcox Water Works, L.P.; Austin JSB, Ltd.; Fox River Real Estate Holdings, Inc.; M. Buckner Baccus; Daniel T. Cooper; Ross M. Cummings; Warren Demaio; Bruce F. Dickson; Keith K. Dickson; Eugene A. Frost, Jr.; Mark A. Frost; August J. Pellizzi

3. **<u>Counsel for Appellants Dallas Water Alliance Associates, Ltd., and Greg Attwood</u>:**

   Richard D. Villa; Streusand, Landon, Ozburn & Lemmon, LLP

4. **<u>Counsel for Appellant Francis R. Reissig, Jr.</u>:**

   C. Daniel Roberts; C. Daniel Roberts, P.C.

5. **<u>Counsel for Appellants Paul Keller, and Keller Shoreline Investments, Ltd</u>:**

   Kell Corrigan Mercer; Kell C. Mercer, P.C.

**6. <u>Plan Trustee and Subchapter V Trustee</u>:**

Stephen W. Sather; Barron & Newburger, PC

**7. <u>Counsel for Appellees Blue Water Systems, LP, Blue Water Vista Ridge, LLC, and Blue Water 130 Project, LP</u>:**

Paul M. Terrill III, Ryan Greene; Terrill & Waldrop

**8. <u>Counsel for Austin JSB, Ltd., Fox River Real Estate Holdings, Inc., M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Eugene A. Frost, Jr., Mark A. Frost, and August J. Pellizzi</u>:**

Marvin E. Sprouse III; Sprouse Law Firm.

s/*Richard D. Villa*
Richard D. Villa

Attorney for Appellants,
Dallas Water Alliance
Associates, Ltd., and
Greg Attwood

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants Dallas Water Alliance Associates, Ltd., Francis R. Reissig, Jr., Paul Keller, Keller Shoreline Investments, Ltd., and Greg Attwood (collectively, the "Appellants") request oral argument because they believe it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. i

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ................................................ iv

TABLE OF CONTENTS ........................................................................................ v

TABLE OF AUTHORITIES ................................................................................. vi

I.      STATEMENT OF JURISDICTION ............................................................. 1

II.     STATEMENT OF ISSUES ........................................................................... 1

III.    STATEMENT OF THE CASE ...................................................................... 2

        A.      Statement Of Facts ........................................................................... 5

        B.      Course Of Proceedings and Disposition In The Bankruptcy Court and District Court
                ........................................................................................................... 7

IV.     SUMMARY OF ARGUMENT .................................................................. 10

V.      ARGUMENT .............................................................................................. 12

        A.      The Bankruptcy Court and District Court each erred in finding and/or concluding
                that the Settlement Agreements are ambiguous. ........................... 13
                1.      The District Court erred in finding and/or concluding after reconsideration
                        of its prior decision that the Settlement Agreements are ambiguous, in considering
                        parole evidence, and in interpreting such Settlement Agreements to be that Debtor
                        was not bound by, and had no obligations, including without limitation, payment
                        obligations to Appellants, under the Settlement Agreements. ............................. 16
                2.      The District Court erred in finding and/or concluding after reconsideration
                        of its prior decision, that the Settlement Agreements are ambiguous, in
                        considering parole evidence, and in interpreting such Settlement Agreements to
                        be that MetWater Texas, the general partner for Debtor, did not execute the
                        Settlement Agreements as an agent for and on behalf of the Debtor. ................... 25

        B.      The District Court erred in finding and/or concluding that there was inconclusive
                evidence that funds were invested by the Appellants in the Debtor and/or
                benefitted the Debtor, thereby giving rise to a claim against the Debtor. ............ 29

VI.     CONCLUSION ........................................................................................... 34

CERTIFICATE OF COMPLIANCE ........................................................................ 38

# TABLE OF AUTHORITIES

## Cases

*A to Z Rental Ctr. v. Burris*,
    714 S.W.2d 433 (Tex. App. 1986) ............................................................28

*Cities of Abilene v. Pub. Util. Comm'n of Tex.*,
    146 S.W.3d 742 (Tex. App. —Austin 2004, no pet.)..................................13

*David J. Sacks, P.C. v. Haden*,
    266 S.W.3d 447 (Tex. 2008) .....................................................................14

*De Benavides v. Warren*,
    674 S.W.2d 353 (Tex. App.—San Antonio 1984, no pet.) .........................13

*Edwards v. Mid-Continent Office Distribs.*,
    252 S.W.3d 833 (Tex. App.—Dallas 2008, pet. Denied)...........................29

*Friendswood Dev. Co. v. McDade & Co.*,
    926 S.W.2d 280 (Tex.1996) ......................................................................14

*Heldenfels Bros. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992) .......................................................................29

*Hinton Prod. Co. v. Arcadia Expl. & Prod. Co*,
    261 S.W.3d 865 (Tex. App. 2008) ............................................................13

*Hunt v. Baldwin*,
    68 S.W.3d 117 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ..............29

*Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*,
    334 F.3d 423 (5th Cir. 2003) ....................................................................26

*In re Kellog Brown & Root, Inc.*,
    166 S.W.3d 732 (Tex. 2005) .....................................................................29

*Jacobson v. DP Partners, Ltd. P'ship*,
    245 S.W.3d 102 (Tex. App.-Dallas 2008, no pet.)...............................13, 15

*James v. Hiscox*,
    No. 03-15-00256-CV, 2016 WL 1039034, (Tex. App.—Austin Mar. 10,
    2016, no pet.) ............................................................................................15

*Johnson v. Armstrong*,
   83 Tex. 325, 18 S.W. 594 (Tex.1892) .......................................................28

*Kachina Pipeline Co., Inc. v. Lillis*,
   471 S.W.3d 445 (Tex. 2015) ...........................................................14-15, 22

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*,
   630 F.2d 250 (5th Cir. 1980) ....................................................................25

*Norhill Energy LLC v. McDaniel*,
   517 S.W.3d 910 (Tex. App.—Fort Worth 2017, pet. denied)....................30

*Port Elevator Brownsville v. Gutierrez*,
   198 Fed. Appx. 362 (5th Cir. 2006) ..........................................................25

*Staats v. Miller*,
   243 S.W.2d 686 (Tex. 1951) .....................................................................30

*Texas v. Am. Tobacco Co.*,
   463 F.3d 399 (5th Cir. 2006) ....................................................13-14, 15-16

## Statutes

28 U.S.C. § 1334 ..............................................................................................1

28 U.S.C. § 157(b)(2)(A)...................................................................................1

28 U.S.C. § 158(a).............................................................................................1

## Other Authorities

Black's Law Dictionary (Second Edition),
   "Secure" ....................................................................................................21

Restatement (Third) Of Agency § 1.04 (2006).................................................26

Restatement (Third) Of Agency § 6.01 (2006).................................................26

3 Tex. Jur. 3d Agency § 198 ............................................................................28

# I. STATEMENT OF JURISDICTION

The Bankruptcy Court for the Western District of Texas ("Bankruptcy Court") had jurisdiction over the underlying contested matter pursuant to 28 U.S.C. § 1334. The underlying subject matter was a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O). The final orders of the Bankruptcy Court were entered on August 29, 2023. Appellants timely filed their notices of appeal within fourteen days of the order being entered. *See* Fed. R. Bankr. P. 8002. A final order denying a proof of claim and an application for allowance and payment of a post-petition claim is appealable. 28 U.S.C. § 158(a).

The United States District Court for the Western District of Texas, Austin Division had jurisdiction over the appeal of the Bankruptcy Court's Orders pursuant to 28 U.S.C. § 158(a).

The United States Court of Appeals for the Fifth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

# II. STATEMENT OF ISSUES

The fundamental issue before the Court is whether Debtor Metropolitan Water Company, L.P. ("Met Water") is bound by two virtually identical settlement agreements entered into by its general partner, Metropolitan Water Company of Texas, LLC's ("MetWater Texas"), on behalf of itself and MetWater, in which the settlement agreements each explicitly state in the signature block that MetWater

Texas is signing on behalf of itself and on behalf of MetWater and further explicitly states in the body of the agreements that MetWater Texas will make production payments, again, for itself and on behalf of MetWater. More specifically, the issues on appeal before this Court are as follows:

A. Whether the District Court erred in finding and/or concluding after reconsideration of its prior decision that the Settlement Agreements are ambiguous, in considering parole evidence, and in interpreting such Settlement Agreements to be that Debtor was not bound by, and had no obligations, including without limitation, payment obligations to Appellants, under the Settlement Agreements?

B. Whether the District Court erred in finding and/or concluding after reconsideration of its prior decision, that the Settlement Agreements are ambiguous, in considering parole evidence, and in interpreting such Settlement Agreements to be that MetWater Texas, the general partner for Debtor, did not execute the Settlement Agreements as an agent for and on behalf of the Debtor?

C. Whether the District Court erred in finding and/or concluding that funds that were invested by the Appellants in the Debtor and/or benefitted the Debtor did not give rise to claims against the Debtor under either quantum meruit and/or money had and received?

## III. STATEMENT OF THE CASE

For a general overview, this case arises from claims based on two virtually identical Settlement Agreements entered into ten (10) years ago resolving an underlying dispute stemming from twenty (20) years ago (the "Settlement Agreements"). In 2003, the Appellants, along with other similarly situated parties, contributed funds toward a venture involving the exploration and production of groundwater, and this venture involved groundwater leases owned by and in the

name of MetWater, which is controlled by its sole general partner, MetWater Texas. A dispute surfaced regarding the character and nature of the interest of Appellants and the other parties in the venture after the contribution of the funds. In 2013, the parties entered into Settlement Agreements clarifying the nature and character of the interest of Appellants (and other parties) and providing for certain production payments to be made to Appellants. At issue in this appeal is whether the Settlement Agreements bind MetWater (in addition to MetWater Texas) or binds only MetWater Texas to make the production payments, which becomes an important inquiry because MetWater (alone) filed bankruptcy and it is a fully solvent estate, meaning that all creditors are anticipated to be paid in full. All signing parties to the Settlement Agreements agree as to the interpretation of the Settlement Agreements and as to the binding nature of the Settlement Agreements on MetWater. Third parties, however, who do not have contractual privity, have objected to the claims arising from the Settlement Agreements and they argue for a different interpretation of the Settlement Agreements to apply, namely that just MetWater Texas alone is liable for the production payments under the Settlement Agreements. The Bankruptcy Court found the Settlement Agreements to be ambiguous and ultimately adopted the interpretation by these third parties.

After fully briefing the issues, the District Court ruled in a well-reasoned 20 page order that meticulously provided legal analysis of all provisions in the

Settlement Agreements and concluded that the Settlement Agreements were *not ambiguous* as a matter of law. The District Court found the following:

> The Court finds the bankruptcy court incorrectly concluded the Settlement Agreement was ambiguous in whether it bound MetWater in addition to MetWater Texas. Again, courts must consider all provisions in a contract "with reference to the whole instrument." Kachina Pipeline Co., 471 S.W.3d at 450. The bankruptcy court gave significant weight to the definition of "Party" not including MetWater and only MetWater Texas. But the signature block unambiguously states MetWater Texas binds MetWater to the agreement. And the language throughout the contract reflects MetWater's payment obligations under this agreement. The agreement states that "payments by MetWater Texas would be made 'on behalf of MetWater.'" This language clearly indicates that MetWater is obligated to make production payments, and that MetWater Texas would make those payments on its behalf — just as MetWater Texas signed the Settlement Agreement on MetWater's behalf. If MetWater did not have a payment obligation with regard to the production payments, this language "on behalf of MetWater" would be "rendered meaningless." Chapman, 747 F.2d at 983 (citing, Coker, 650 S.W.2d at 393). Reading the agreement to render a provision meaningless is exactly what this Court must not do. Id. The only reasonable interpretation of the Settlement Agreement, considering all the provisions together, is that MetWater was bound by the agreement and obligated to make production payments.
> ROA.1616-1617.

The Appellees then filed a motion for rehearing, which was granted after the District Court mistakenly concluded that Appellants had not responded to the Motion for Rehearing[1]. ROA.1645. Based upon no new evidence and the same legal arguments by the Appellees, the District Court reversed itself to hold that the Settlement Agreements were ambiguous and affirmed its reconsideration.

---

[1] Under Federal Rules of Bankruptcy Procedure 8022(a)(3), Appellants were prohibited from responding to the motion for rehearing unless specifically requested by the District Court.

Ultimately thereafter, a response was requested by the District Court for the Appellants. The District Court then reaffirmed his ruling under the Motion for Reconsideration in essence finding the Settlement Agreement ambiguous. Because the Settlement Agreements unambiguously bind MetWater to the obligation of production payments, Appellants pursue this appeal.

A.     Statement Of Facts

MetWater, the Debtor, was formed as a Texas Limited Partnership with MetWater Texas as the sole and controlling general partner of Met Water. ROA.335. Met Water engaged in groundwater leasing with third-party landowners for the exploration and production of groundwater. It was one of the first of its kind to take on this type of water development and supplies millions of gallons of water to the City of San Antonio over a 60-year time period. ROA.537:4-538:10; ROA.1379-1381.

Scott Carlson is the President of MetWater Texas and controls MetWater Texas, which requires MetWater Texas to act on behalf of itself and Met Water as its general partner. ROA.335. MetWater Texas and Met Water engaged with Tightrope Investments, LP and Tightrope Holdings, LLC whereby in 2003, funds were contributed in exchange for an interest in the venture. ROA.366. The other members of the Tightrope group included the Appellants Dallas Water Alliance Associates, Ltd., Francis R. Reissig, Jr., Paul Keller, Keller Shoreline Investments,

Ltd., and Greg Attwood (collectively the "Appellants" or the "Tightrope Group").
ROA.328.

The allowability of the Appellants' Proofs of Claim and Post-Petition Applications are based on the two "Settlement Agreement and Release" signed by the parties on December 11 and 20, 2012 and September 9, 11, 12, and 13, 2013, respectively. *See* ROA.321-327.

While in the introductory paragraph of the Settlement Agreements there is a defined term of "Party" that includes MetWater Texas but does not identify Met Water, both Settlement Agreements identify MetWater twenty-three (23) times throughout each document (a total of forty-six times). *See* ROA.321-327. Both Settlement Agreements contain language that "[MetWater Texas] for itself and as general partner on behalf of [Met Water] will make, or secure and ensure the grant of, production payments." *See* ROA.321 (emphasis added). The Settlement Agreements are signed by applicable parties of the Tightrope Group and by "[MetWater Texas], for itself and on behalf of and binding upon [Met Water]." ROA.327.

The Settlement Agreements also state in the recitals that "[MetWater Texas] is [Met Water's] sole and controlling general partner and [Met Water] pays and will continue to pay [MetWater Texas] production payments for water produced from the Venture." ROA.321. Additionally, both Settlement Agreements acknowledge

that MetWater has obligations thereunder by stating:

> Any sale, transfer or assignment by [Met Water] or [MetWater Texas] of any of the [Met Water] Leases or rights pertaining to the [Met Water] Leases shall only be made if such sale, transfer or assignment is made expressly subject to the rights of [the applicable Tightrope Group parties] to the Production Payments and with such buyer, assignee and/or transferee assuming the *obligations of [Met Water] and [MetWater Texas] under this Agreement.*" ROA.322. (emphasis added).

Numerous provisions within the Settlement Agreements evidence MetWater's obligations to make production payments to the Appellants.

### B.   Course Of Proceedings and Disposition In The Bankruptcy Court and District Court

On November 22, 2021, Met Water filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. ROA.335.

Appellants each filed proofs of claim, which asserted pre-petition claims for royalties and production payments arising from their respective Settlement Agreements (the "Proofs of Claim").  Appellees filed objections to the Proofs of Claim.  ROA.336-337.

Further, Appellants each filed an Application for Allowance and Payment of Post-Petition Claims for Royalties/Production Payments Pursuant to Agreement based on post-petition royalties/production payments arising from their respective Settlement Agreement (the "Post-Petition Applications"). ROA.336. Appellees filed their objections to the Post-Petition Applications. ROA.337-338.

For scheduling purposes in its Scheduling Orders, the Bankruptcy Court

consolidated the Proofs of Claim and the Post-Petition Applications of the Appellants. ROA.329-330. On April 26, 2023, the parties filed a Joint Pretrial Order that stipulated facts accepted and considered by the Bankruptcy Court. ROA.328. On April 26 and 27, 2023, the Appellants, Blue Water, the Limited Partners, and the Trustee filed their Proposed Findings of Fact and Conclusions of Law. ROA.119. On July 21, 2023, the Appellants filed a Memorandum of Law discussing the ability of an agent to bind a principal. ROA.386.

On May 4, 2023, the Bankruptcy Court ordered a consolidated hearing on the objections to the Proofs of Claim and the Post-Petition Applications filed by the Appellants regarding the allowability of their claims against Met Water. ROA.1441. On July 31, August 2, and August 3, 2023, the Bankruptcy Court conducted a consolidated hearing (trial) on the merits of allowability. At the hearing, the Bankruptcy Court determined the Settlement Agreements were ambiguous and proceeded to consider parol evidence.

On August 29, 2023, the Bankruptcy Court announced its decision by Telephonic Oral Ruling. ROA.1457. The Bankruptcy Court ultimately concluded that the Settlement Agreements did not obligate Met Water to make production payments to the Appellants. Therefore, the Appellants' Proofs of Claim were disallowed and the Bankruptcy Court denied the Post-Petition Applications for post-petition production payments. Also, on August 29, 2023, the Bankruptcy Court

entered its Orders Granting Objection to and Disallowing Proofs of Claim (ROA.394), and the Orders Denying Application for Allowance and Payment of Post-Petition Claims for Royalties/Production Payments Pursuant to Agreement. ROA.400.

Each of the Appellants timely appealed the Bankruptcy Court's final orders disallowing the Proofs of Claim and denying the Post-Petition Applications. The appeals were consolidated for all purposes in Case No. 1:23-cv-01100-DAE. After briefing was complete, the District Court initially reversed and remanded the Bankruptcy Court Order, and found that the Settlement Agreements were not ambiguous and "that there was only one reasonable interpretation of the Settlement Agreement[s], considering all the provisions together, is that MetWater was bound by the agreement and obligated to make production payments." ROA.1617. Thereafter, the Appellees moved for rehearing. Upon rehearing, the District Court effectively adopted the Appellees' arguments and affirmed the Bankruptcy Court's orders. This appeal to the Fifth Circuit follows.

Because the Settlement Agreements unambiguously bind Met Water to production payment obligations as set forth therein, the Bankruptcy Court's orders disallowing and the District Court's affirmance of the disallowance of the Appellants' Proofs of Claims and denying and affirming the denial of the Post-Petition Applications for payment of post-petition claims should be REVERSED.

# IV.   SUMMARY OF ARGUMENT

The Bankruptcy Court erred when it disallowed Appellants' Proofs of Claim and denied each of Appellants' Post-Petition Applications. The District Court erred when it reconsidered its prior ruling and then affirmed the Bankruptcy Court's rulings.

The Bankruptcy Court and District Court erred in concluding that the Settlement Agreements are ambiguous.  In order to reach that conclusion regarding whether Debtor was bound by and had obligations under the Settlement Agreements, multiple provisions in the Settlement Agreements have to be ignored, including but not limited to the following: (a) the signature blocks that expressly state the general partner, MetWater Texas, is signing on behalf of MetWater; (b) the anti-assignment language specifically identifying that MetWater has obligations under the Settlement Agreements; and (c) the payment obligation provisions clearly saying that such payments will be made by MetWater Texas on behalf of MetWater.   After applying established rules of contract construction (the "four corners doctrine" discussed *infra* at page 15), the only reasonable interpretation to be drawn is that: (i) MetWater was bound by the Settlement Agreements through its general partner, MetWater Texas; (ii) that MetWater had obligations under the Settlement Agreements; and (iii) that MetWater's obligation (shared with MetWater Texas) were to make, secure, and ensure that production payments were made to the Appellants. Thus, the Bankruptcy

Court and the District Court erred in disallowing the Proofs of Claim and denying the Post-Petition Claims.

With regard to whether the Bankruptcy Court and District Court erred in concluding that the Settlement Agreements are ambiguous regarding whether MetWater Texas, the general partner for Debtor, executed the Settlement Agreements as an agent for and on behalf of the Debtor, MetWater Texas, the general partner for MetWater, unambiguously executed the Settlement Agreements on behalf of itself and on behalf of MetWater. Under Texas law, a disclosed principal can be held liable as a party to a contract through the execution of the contract by its agent. In the Settlement Agreements, Met Water was certainly disclosed (a total of 23 times), and, in addition to other provisions identifying MetWater Texas' status as the general partner of MetWater, the Settlement Agreements specifically provide in the signature block that it is being signed by "[MetWater Texas], for itself and on behalf of and binding upon [Met Water]." As such, there is no ambiguity that MetWater Texas was executing this document on behalf of and to be binding upon MetWater.

With regard to whether the Bankruptcy Court and District Court erred in finding and/or concluding that there was inconclusive evidence that funds were invested by the Appellants in the Debtor and/or benefitted the Debtor, Appellants put forth testimony and documentary evidence establishing that funds were invested

into MetWater Texas and such funds were then transferred to MetWater (Debtor), thereby benefitting MetWater with providing the necessary funding for both lease management/operations and the acquisition of additional leases for the success of the overall project. Further, as the testimony continued, without this funding, the overall project would have failed. There was no contrary evidence ever offered by the Appellees and, as such the only evidence in the record establishes that the Debtor received and benefited from the funding. This evidence establishes Appellants' claims for quantum meruit and/or money had & received, which are equitable theories of recovery under Texas law.

Thus, the Bankruptcy Court and the District Court erred in concluding that the Appellants were not entitled to allowance of their Proofs of Claim and in denying their Post-Petition Applications.

## V. ARGUMENT

The Bankruptcy Court and the District Court erred as a matter of law in disallowing Appellants' Proofs of Claim and denying the Post-Petition Applications because: (a) the Settlement Agreements are not ambiguous both with regard to MetWater having obligations under the Settlement Agreements and with regard to the fact that MetWater Texas, as general partner of MetWater, executed the Settlement Agreements on behalf of MetWater; and (b) there was sufficient and unrefuted evidence establishing that funds were invested by Appellants in the Debtor

and/or benefited the Debtor, thereby giving rise to a claim against the Debtor.

**A. The Bankruptcy Court and District Court each erred in finding and/or concluding that the Settlement Agreements are ambiguous.[2]**

The Settlement Agreements are not ambiguous when applying the established rules of contract construction. ROA.327 "Settlement agreements are interpreted under the same rules as contracts." *Hinton Prod. Co. v. Arcadia Expl. & Prod. Co.,* 261 S.W.3d 865 (Tex. App.—Dallas 2008, no pet.); *see also Cities of Abilene v. Pub. Util. Comm'n of Tex.,* 146 S.W.3d 742, 747 (Tex. App.-Austin 2004, no pet.) "If a contract can be given a certain or definite meaning or interpretation, then we construe the unambiguous contract as a matter of law." *Jacobson v. DP Partners, Ltd. P'ship,* 245 S.W.3d 102, 106 (Tex. App.-Dallas 2008, no pet.). "Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract." *Texas v.*

---

[2] It is worth noting that the Settlement Agreements date back ten (10) years ago resolving a dispute originating from a transaction from twenty (20) years ago, and thus a finding of ambiguity of the Settlement Agreements at this date (and the imposition of the burden on Appellant to put forth parol evidence of the underlying dispute from 2003 and the formation of the Settlement Agreements from 2012 and 2013, respectively) is fundamentally prejudicial given the significant passage of time. As such, the affirmative defenses of laches, estoppel, statute of limitations, and waiver would be applicable to any objection to the validity and enforceability of the Settlement Agreements after an unreasonable delay that would be detrimental and prejudicial to Appellant**.** *See, e.g., De Benavides v. Warren*, 674 S.W.2d 353 (Tex. App.—San Antonio 1984, no pet.) (in a declaratory judgment action disputing the right to oil production royalties, the court dismissed the action for laches because there was a seven (7) year delay between the cessation of production and the plaintiff's action arguing that the defendant's royalty interest had terminated, and this delay prejudiced the defendant by, among other things, hindering the defendant from obtaining evidence pertaining to the factual issues that otherwise would have been available without the delay).

*Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (evaluating a settlement agreement as a contract); *see also Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 283 (Tex. 1996). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).

"In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). A court may consider the facts and circumstances surrounding a contract, including "the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction." *Id.* But while evidence of circumstances can be used to "inform the contract text and render it capable of only one meaning," extrinsic evidence can be considered only to interpret an ambiguous writing, not to create ambiguity. "A contract is not ambiguous simply because the parties disagree over its meaning." *Id.* Rather, "[i]f a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Id.*

"When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless." *Id.* "We give contract terms their plain and ordinary meaning unless

the instrument indicates the parties intended a different meaning." *Id.* "Moreover, we have stated that a court should construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served." *Id.* "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.*

If a contract's language can be given a certain or definite meaning, the contract is unambiguous, and the courts should interpret it as a matter of law. A contract is not ambiguous because of "a simple lack of clarity," or because the parties disagree on its meaning. Instead, the contract must be susceptible to more than one reasonable meaning after application of established rules of construction. Courts give contractual terms their plain and ordinary meaning unless the contract shows that the parties intended a different meaning, reading the contract as a whole. *James v. Hiscox*, No. 03-15-00256-CV, 2016 WL 1039034, at *2 (Tex. App.—Austin Mar. 10, 2016, no pet.) (internal citations omitted). "If a contract can be given a certain or definite meaning or interpretation, then we construe the unambiguous contract as a matter of law." *Jacobson v. DP Partners, Ltd. P'ship,* 245 S.W.3d 102, 106 (Tex. App.-Dallas 2008, no pet.).

This Circuit and countless other courts have stated, the interpretation of a contract is confined to the *four corners* of the document, and parol evidence cannot be considered to create an ambiguity. *See, e.g., Texas, v. American Tobacco Co.*,

463 F.3d 399, 407 (5th Cir. 2006) ("Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity. Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract.") (internal citations omitted).

When applying the rules of construction, the Settlement Agreements are not ambiguous, both as to: (i) whether MetWater was bound by and had obligations under the Settlement Agreements; and (ii) whether MetWater Texas signed the Settlement Agreements on behalf of MetWater.

1.   *The District Court erred in finding and/or concluding after reconsideration of its prior decision that the Settlement Agreements are ambiguous, in considering parole evidence, and in interpreting such Settlement Agreements to be that Debtor was not bound by, and had no obligations, including without limitation, payment obligations to Appellants, under the Settlement Agreements.*

When reviewing the Settlement Agreements, the only reasonable interpretation to be drawn is that (i) MetWater was bound by the Settlement Agreements through its general partner, MetWater Texas, (ii) that MetWater had obligations under the Settlement Agreements, and (iii) that MetWater's obligation was to make, secure, and ensure that production payments were made to the Appellants.

Set forth herein are imaged-excerpts of the relevant provisions of the Settlement Agreements (see ROA.321):

## SETTLEMENT AGREEMENT AND RELEASE

This will confirm and evidence the agreement ("Agreement") of DALLAS WATER ALLIANCE ("DWA"), GREG ATTWOOD ("Attwood"), FRANCIS R. REISSIG, JR. ("Reissig") and METROPOLITAN WATER COMPANY OF TEXAS, LLC ("MWC"). DWA, Attwood, Reissig and MWC may be individually referred to as a "Party" and collectively as "the Parties."

. . . .

### 1.    Royalty Payments.

Effective and beginning May 31, 2013, MWC for itself and as general partner on behalf of MET will make, or secure and ensure the grant of, production payments (the "Production Payments") for water produced from and sold (or provided or transferred for consideration) to a third party from any and all MET Leases, including without limitation those currently held, and those to be held in the future, by MET or any of MET's affiliates, successors or assigns, and any successor or other endeavor by, through or under MET or MWC that sells or transfers water under the MET Leases (or any modification, replacement or renewal of same) from the Project, or under the Permits[2]:

. . . .

The Production Payments due hereunder shall be made on or before ninety (90) days following the month of production and delivered to the Parties at the address identified in Section 11. Notices. Any sale, transfer or assignment by MET or MWC of any of the MET Leases or rights pertaining to the MET Leases shall only be made if such sale, transfer or assignment is made expressly subject to the rights of DWA, Attwood and Reissig to the Production Payments and with such buyer, assignee and/or transferee assuming the obligations of MET and MWC under this Agreement.[5] MWC shall execute and deliver a memorandum in recordable form to put the public on notice of the existence of the Production Payment obligations as reasonably requested by DWA, Attwood and Reissig.

---

[5] This includes without limitation any termination or modification of MET's rights under the MET's Leases that would affect the ability to make the Production Payments.

METROPOLITAN WATER COMPANY OF TEXAS, LLC, for itself
and on behalf of and binding upon MET

By: _____

Name: W. Scott Carlson _____

Its: President _____

Date: _____9/11/2013_____

STATE OF TEXAS              §

COUNTY OF _____§

       Subscribed and sworn to before me, the undersigned authority, on this day duly appeared
W. Scott Carlson on behalf of METROPOLITAN WATER COMPANY OF TEXAS, LLC and
MET and executed the foregoing Settlement Agreement and Release as his own free act on this
_____ day of _____, 2013, to which witness my hand and official seal.

       Not included in the image above is an additional recital that clearly identifies

MetWater Texas as the general partner of MetWater:

> "[MetWater Texas] is [Met Water's] sole and controlling
> general partner and [Met Water] pays and will continue to
> pay [MetWater Texas] production payments for water
> produced from the Venture."

ROA.321 at p.1 (Recitals vi). The very clear interpretation of this Recital is that

MetWater Texas is the sole and controlling general partner of MetWater with

binding authority for MetWater.

       With that Recital and the identification and notice of MetWater Texas'

position as the general partner of MetWater, the Settlement Agreements go on to

include a signature block that includes MetWater Texas signing on behalf of itself

and on behalf of MetWater:

> "[MetWater Texas], for itself and on behalf of and binding
> upon [Met Water]."[3]

ROA.327.  There is no other reasonable interpretation of this signature block other than that the intent of the parties was to bind MetWater to the applicable obligations and terms under the Settlement Agreements.

In fact, the Settlement Agreements specifically include language in the anti-assignment provision indicating that MetWater has obligations under the Settlement Agreements:

> "Any sale, transfer, or assignment by MET [MetWater] or MWC [MetWater Texas] of any of the MET Leases [MetWater Leases] or rights pertaining to the MET Leases [MetWater Leases] shall only be made if such sale, transfer, or assignment is made expressly subject to the rights of [the Tightrope Group] to the Production Payments and with such buyer, assignee, and/or transferee assuming *the obligations of MET [MetWater]* and MWC [MetWater Texas] *under this Agreement*."

ROA.322, at para. 1(C) (italics added for emphasis).  The only reasonable interpretation of this provision -- which requires that any assignment of the MetWater Leases to a third party shall require the third party to assume the

---

[3] The Settlement Agreements also contain representations that each signatory has the requisite authority to execute the document and it is binding and enforceable upon such respective party. (ROA.323, at para. 9).

obligations of MetWater under the Settlement Agreements -- is that MetWater must have obligations under the Settlement Agreements to be assumed. Otherwise, this language would be superfluous and meaningless.

As to the obligations themselves, MetWater's obligations under the Settlement Agreements are two-fold: (1) first, as indicated in the Recital above (i.e., "[MetWater Texas] is [Met Water's] sole and controlling general partner and [Met Water] pays and will continue to pay [MetWater Texas] production payments for water produced from the Venture"), MetWater has the obligation to make production payments to MetWater Texas for water produced from the Venture and (2) second, MetWater has the obligation of production payments to Appellants, and the understanding is that it will satisfy this obligation through its general partner, MetWater Texas (which receives the production payments from MetWater by virtue of the below paragraph):

> **1.     Royalty Payments.** [MetWater Texas] for itself and as general partner on behalf of [MetWater] will make, or secure and ensure the grant of, production payments (the "Production Payments") for water produced from and sold (or provided or transferred for consideration) to a third party from any and all [MetWater] Leases, including without limitation those currently held, and those to be held in the future, by [MetWater] or any of [MetWater's] affiliates… that sells or transfers water under the [MetWater] leases (or any modification, replacement or renewal of same) from the Project, or under the Permits:

ROA.321, para. 1.    In conjunction with the royalty payment provision, the

inescapable conclusion, and thus the only reasonable interpretation, of this provision is that MetWater will pay MetWater Texas production payments for water produced from the Venture and, in turn, MetWater Texas, on its own behalf and on behalf of MetWater, will make such production payments to the Appellants and, because payments by MetWater Texas would be made "on behalf of MetWater," MetWater must have a payment obligation with regard to the production payments. Otherwise, this language "on behalf of MetWater" would be superfluous and unnecessary.

Relatedly, it is worth noting that the language is not just limited to making production payments but also includes language such as securing and ensuring the grant of production payments ("make, *or secure and ensure* the grant of production payments," ROA.321, para. 1 (emphasis added)), thus reflecting not only a direct payment obligation but also a secondary obligation (such as a guarantee) that such production payments will be made,[4] further supporting and consistent with the interpretation that MetWater would likewise be obligated for the production payments.

Consequently, when reviewing the entire agreement and interpretating these provisions harmoniously, the only reasonable interpretation to be drawn from the

---

[4] *See* Black's Law Dictionary p. 1066 (Second Edition) (defining "Secure" as to assure payment, performance or indemnity; to guaranty to make certain the payment of a debt) (citing *Pennell v. Rhodes*. 9 Q. B. 114: *Ex parte Reynolds*. 52 Ark. 330, 12 S. W. 570: *Foot v. Wehh*, 55} Barb. (N. Y.) 52); *see also* Merriam-Webster (defining "Ensure" as to make sure, certain, or safe: Guarantee).

Settlement Agreements is that (i) MetWater was bound by the Settlement Agreements through its general partner, MetWater Texas, (ii) that MetWater had obligations under the Settlement Agreements, and (iii) that MetWater's obligation (shared with MetWater Texas) was to make, secure, and ensure that production payments were made to the Appellants.

The Bankruptcy Court and the District Court, however, found the Settlement Agreements to be ambiguous, and interpreted the Settlement Agreements as not binding upon MetWater and that MetWater had no obligations under the Settlement Agreements. To reach this interpretation, however, the Bankruptcy Court and the District Court failed to follow important principles of contract construction by giving a single provision (the introductory sentence in the Settlement Agreements containing the definition of "Party") controlling effect and failing to harmonize and give effect to each provision in the entire agreement so that none is rendered meaningless. *See Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) ("When discerning the contracting parties' intent, courts must examine the entire agreement to harmonize and give effect to each provision so that none is rendered meaningless. [. . .] No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). Instead, the Bankruptcy Court and the District Court reached an interpretation that is wholly inconsistent with the express words in the Settlement

Agreements, and the only way such interpretation could be reached is by reading-out and ignoring various words and provisions in the Settlement Agreements as superfluous language as follows:

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This will confirm and evidence the agreement ("Agreement") of DALLAS WATER ALLIANCE ("DWA"), GREG ATTWOOD ("Attwood"), FRANCIS R. REISSIG, JR. ("Reissig") and METROPOLITAN WATER COMPANY OF TEXAS, LLC ("MWC"). DWA, Attwood, Reissig and MWC may be individually referred to as a "Party" and collectively as "the Parties."

1.   **Royalty Payments.**

Effective and beginning May 31, 2013, MWC █████████████████████ ████████ will make, or secure and ensure the grant of, production payments (the "Production Payments") for water produced from and sold (or provided or transferred for consideration) to a third party from any and all MET Leases, including without limitation those currently held, and those to be held in the future, by MET or any of MET's affiliates, successors or assigns, and any successor or other endeavor by, through or under MET or MWC that sells or transfers water under the MET Leases (or any modification, replacement or renewal of same) from the Project, or under the Permits[2]:

The Production Payments due hereunder shall be made on or before ninety (90) days following the month of production and delivered to the Parties at the address identified in Section 11. Notices. Any sale, transfer or assignment by █████MWC of █████████████████████ rights pertaining to the MET Leases shall only be made if such sale, transfer or assignment is made expressly subject to the rights of DWA, Attwood and Reissig to the Production Payments and with such buyer, assignee and/or transferee assuming the obligations of █████MWC under this Agreement.[5] MWC shall execute and deliver a memorandum in recordable form to put the public on notice of the existence of the Production Payment obligations as reasonably requested by DWA, Attwood and Reissig.

[5] ████████████████████████████████████████████
████████████████████████████████████

METROPOLITAN WATER COMPANY OF TEXAS, LLC, ████████
████████████████████████████████

By: _____
Name: W. Scott Carlson
Its: President
Date: ___9/11/2013___

STATE OF TEXAS              §

COUNTY OF _____  §

        Subscribed and sworn to before me, the undersigned authority, on this day duly appeared
W. Scott Carlson on behalf of METROPOLITAN WATER COMPANY OF TEXAS, LLC ███
███████ executed the foregoing Settlement Agreement and Release as his own free act on this
____ day of _____, 2013, to which witness my hand and official seal.

Only with the language as deleted (blacked out) above could the Settlement

Agreements be interpreted as not binding upon MetWater or that MetWater had no

obligations under the Settlement Agreements.

Because the District Court's interpretation of the Settlement Agreements

could only be derived after reading-out various words and provisions in the

Settlement Agreements as superfluous and meaningless, thereby violating the

established rules of contract construction, the District Courts erred in their

interpretation of the Settlement Agreements and in finding them ambiguous. When

reviewing and applying the applicable rules of contract construction, the only

reasonable interpretation of the Settlement Agreements is that MetWater was bound

by the Settlement Agreements and shared the obligation to make, secure and ensure

that production payments were made to Appellants.

> **2.** **_The District Court erred in finding and/or concluding after reconsideration of its prior decision, that the Settlement Agreements are ambiguous, in considering parole evidence, and in interpreting such Settlement Agreements to be that MetWater Texas, the general partner for Debtor, did not execute the Settlement Agreements as an agent for and on behalf of the Debtor._**

MetWater Texas, the general partner for MetWater, unambiguously executed the Settlement Agreements on behalf of itself and on behalf of MetWater. Under Texas law, a disclosed principal can be held liable as a party to a contract through the execution of the contract by its agent.[5] In the Settlement Agreements, Met Water was certainly disclosed.[6]

The liability of a principal to third parties with whom his agent deals is predicated on the notion that the authorized acts of the agent are the acts of the principal himself. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 272 (5th Cir. 1980). A basic principle of agency is that when an agent enters

---

[5] Although not the facts of our case because the principal is disclosed, Texas jurisprudence even goes so far to bind an undisclosed principal to a contract that was entered into by its agent on its behalf. *See, e.g.*, *Port Elevator Brownsville v. Gutierrez*, 198 Fed. Appx. 362, 366 (5th Cir. 2006): "The principal in an undisclosed agency relationship is liable for a contract signed by the agent in the agent's name if the agent was acting within the scope of his authority." It would be quite the perversion of justice if a completely undisclosed principal could still be bound by a contract executed by its agent but a principal that is disclosed twenty-three times is not bound.

[6] In fact, MetWater and/or MetWater Leases are identified twenty-three (23) times in each Settlement Agreement (46 times total in both Settlement Agreements). In essence, the Appellees complain that MetWater was not identified one additional time, in the first introductory sentence of the Settlement Agreement.

into a contract on behalf of a disclosed principal, the principal, and the third party are parties to the contract.[7] A principal is disclosed if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal and has notice of the principal's identity.[8] *Id.* at 275; *see also*, Restatement (Third) Of Agency § 1.04 (2006).

This Circuit has recognized that a contract can impose liability on both the principal and the agent if agreed to in the contract. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003). This is similar to the Settlement Agreements, in which the agent (MetWater Texas as general partner) and the disclosed principal (MetWater) are both liable for the obligations under the Settlement Agreements.

Well-established law dictates that there is a presumption of joint liability even in the absence of such contractual language. *See Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 823 (5th Cir. 2003) ("As a general rule, an obligation entered into by more than one person is presumed to be joint.") (citing Williston on Contracts, § 36:3 at 621 (4th ed. 1999)); *see also Prospect Energy Corp. v. Dallas Gas Partners, LP*, No. CIV.A. H-10-1396, 2011 WL 843908, at *1 (S.D.

---

[7] *See* RESTATEMENT (THIRD) OF AGENCY § 6.01 (2006), comment (a).

[8] A third party has notice of an agency relationship if the third party has actual knowledge of it or reason to know of it or if the third party has been given notification of it. Restatement (Third) Of Agency § 6.01 (2006), comment (b).

Tex. Mar. 8, 2011), aff'd sub nom., *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148 (5th Cir. 2013) ("Historically, most jurisdictions follow the rule that an obligation entered into by more than one person is presumed to be joint. . .") As expressed in the Restatement (Second) of Contracts, the rule is that where two or more parties to a contract promise the same performance to the same promissee, they incur only a joint duty unless an intention is manifested to create several duties or joint and several duties.") (citing 12 *Williston on Contracts* § 36:3 (4th ed.)). As such, it would be completely unnecessary (and would exceed what is required under well-established law) for the Settlement Agreements to include any additional language as to the "joint liability" of MetWater.

Turning to the specific Settlement Agreements, Met Water is bound by the Settlement Agreements as a disclosed principal through its agent MetWater Texas. Both Settlement Agreements are signed by "[MetWater Texas], for itself and on behalf of and binding upon [Met Water]."[9] ROA.327. at 85. Further, throughout the Settlement Agreements, notice is given in the recitals that MetWater Texas is Met Water's sole and controlling general partner and [Met Water] pays and will continue to pay [MetWater Texas] production payments for water produced from the venture. ROA.321 (Recitals vi). In addition, by the terms of the Settlement Agreements, it

---

[9] There are many ways to indicate an agent/principal relationship, including, for example "Agent on behalf of Principal." *See* RESTATEMENT (THIRD) OF AGENCY Section 6.01 (2006).

was agreed that "[MetWater Texas] for itself and as general partner on behalf of [MetWater] will make or secure and ensure the grant of production payments" for water produced and sold from any and all Met Water's Leases from the Porters Branch Groundwater Project in Burleson and Milam Counties. ROA.321.

"The test for disclosure is the other party's knowledge, or reasonable grounds to know, of the principal's existence or identity, irrespective of the source from which the other party obtains it." *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App. 1986), <u>writ refused NRE</u> (Dec. 17, 1986) (citing *Johnson v. Armstrong,* 83 Tex. 325, 18 S.W. 594, 595 (Tex.1892); *See also*, 3 Tex. Jur. 3d Agency § 198. Here, the terms of the Settlement Agreements directly disclose Met Water as a principal to the agreements and that the general partner Met Water Texas was acting on its own and Met Water's behalf. Indeed, the Appellees ultimately stipulated at the trial that MetWater Texas would have the authority to execute the Settlement Agreements pursuant to Debtor's governing document entitled the Amended and Restated Agreement of Limited Partnership of Metropolitan Water Company, LP, which provides broad authority for the general partner [MetWater Texas] to act for MetWater. ROA.448:16-449:24.

As set forth above, Texas law recognizes that a principal may be bound to the contracts entered on its behalf by its agent. Given the agency relationship between MetWater Texas and Met Water, as well as the disclosure of Met Water under the

Settlement Agreements, Met Water is unambiguously bound and liable under the Settlement Agreements. Therefore, the District Court erred by concluding that the Settlement Agreements were ambiguous regarding whether MetWater Texas executed the Settlement Agreements on behalf of MetWater.

**B.    The District Court erred in finding and/or concluding that there was inconclusive evidence that funds were invested by the Appellants in the Debtor and/or benefitted the Debtor, thereby giving rise to a claim against the Debtor.**

Appellants put forth testimony and documentary evidence establishing that funds were invested into MetWater Texas and such funds were then transferred to MetWater (Debtor), thereby benefitting MetWater by providing the necessary funding for both lease management/operations and the acquisition of additional leases for the success of the overall project.  Further, as the testimony continued, without this funding, the overall project would have failed.  This evidence was important to establish Appellants' claim for quantum meruit and/or money had & received, which are both equitable theories of recovery under Texas law,[10] to the

---

[10] Quantum meruit is an equitable theory of recovery that is intended to prevent unjust enrichment when there is an implied agreement to pay for benefits received. *In re Kellog Brown & Root, Inc*., 166 S.W.3d 732, 740 (Tex. 2005). The elements of an action for quantum meruit are the following: (i) the plaintiff provided certain valuable services or materials; (ii) such valuable services or materials were provided to the defendant; (iii) the defendant accepted the services or materials; and (iv) the defendant had reasonable notice that the plaintiff expected compensation for the services or materials. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Money Had And Received is another equitable doctrine to prevent unjust enrichment. *See Edwards v. Mid-Continent Office Distribs*., 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied); *Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Money Had And Received has the following elements: (i) the defendant holds money; and (ii) the money

extent that the Settlement Agreements were found to be unenforceable against MetWater.

Specifically, the unrefuted evidence was from testimony of Scott Carlson, the principal for MetWater Texas (general partner for MetWater), where he testified as follows:

```
18  Q    No, sir.  Is it -- let me ask you this way.  Is this a
19  chronology that you've created?
20  A    This is a chronology that I created regarding Tightrope.
21  Q    Okay.  And it was recorded at the time as your best
22  recollection of as you knew at the time.
23  A    That is correct, yes, sir.
24  Q    Okay.  Now, in this chronology, the very first page, the
25  second part of it you outline various dates of payments that
1   were received, correct?
2   A    Yes, I do.
3   Q    Okay.  Now, would you agree that $914,242.43 was received
4   by the Tightrope group?
5   A    Paid by the Tightrope group.
```

ROA.535:18-536:5. As such, Carlson admits that the Appellants contributed funds ($914,242.43) toward the venture.

---

belongs to the plaintiff in equity and good conscience. *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951); *Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 917 (Tex. App.—Fort Worth 2017, pet. denied).

```
14  Q    And so what was the additional funding needed for?
15  A    It was needed for project expenses.  That could be
16  allotted for groundwater leases or other expenses related to
17  the ongoing project to advance it along.
18  Q    So would that include, you know, acquiring new leases?
19  A    Acquiring new leases, paying annual rental payments on the
20  existing leases, hydrological studies, just expenses relating
21  to the project.
22  Q    And these leases we're talking about are the leases that
23  are owned by Met Water.
24  A    That is correct, yes, sir.
25  Q    So when these funds go into Met Water Texas, are they
 1  transferred over to Met Water, LP?
 2  A    They're transferred over as expenses being paid by
 3  Met Water, LP are being paid.
 4  Q    So just to make clear, some funds were -- went from
 5  Met Water -- from Tightrope, excuse me, from Tightrope to
 6  Met Water of Texas, and then from Met Water Texas to Met Water,
 7  correct?
 8  A    Yes.
 9  Q    And then in some instances that money went from Tightrope
10  to Met water of Texas and then Met Water of Texas directly paid
11  expenses on behalf of Met Water; is that correct?
12  A    That is correct, yes.
```

ROA.536:14-537:12. Here, Carlson admits that the funds were used to fund the

MetWater venture, acquire new leases, and other operational expenses for the leases

owned by MetWater.

```
 6   Q    So -- and the funds that had went in from Tightrope helped
 7   either procure leases, new leases at that time and/or
 8   maintained existing leases that are a part of the SAWS
 9   contract.
10   A    That is correct, yes, sir.
11   Q    If money hadn't gone into Met Water at that time, back in
12   May, 2003, if money -- and ended February, 2004, if money
13   hadn't gone into Met Water, what would have happened?
14   A    Well, had money not come in we wouldn't have been able to
15   acquire the necessary additional leases.  And I guess you could
16   say if no money came in, the project would die.
17   Q    And if the project would have died, what would have
18   happened to the interest of the limited partners?
19   A    Well, they would have made an investment that didn't
20   realize any income.
```

ROA.538:6-20. Here, Carlson testifies that, without such funds, the MetWater
venture would have failed.

```
18   Q    When the 914,000 was paid, who was that paid to?
19   A    Metropolitan Water Company of Texas.
20   Q    And then what did Metropolitan Water Company of Texas do
21   with the 914,000?
22   A    It would have been used for project expenses, some of
23   which would have been paid directly by Met Water Texas, some of
24   which would have flowed into Met Water or Metropolitan Water
25   Company, LP to pay drafts for leases, whatever expenses of the
 1   projects were at that time.
```

ROA.683:18-684-1. Here, Carlson again admits and reiterates that the funds flowed

to MetWater and was used for project expenses.

```
 9  Q    Okay.  And we know that approximately 914,000 was paid in
10  by the Tightrope Group.
11  A    That is correct.

20  Q    In fact, did Met Water Texas retain the 914,000 and along
21  with Met Water, use it on what we call "the project"?
22  A    Absolutely.
23  Q    Okay.  It was beneficial to Met Water and Met Water Texas,
24  wasn't it, to retain the 914 and keep it in the project?
25  A    Very much so, yes, sir.
```

ROA.694:9-11, 694:20-25. Here, Carlson admits that the funds were used for the
venture, which benefited MetWater.[11]

Not only did this evidence conclusively establish that the funding was
transferred to and benefitted MetWater, but also this evidence was never refuted or
contradicted by any other party. The only evidence in the record establishes that
MetWater received and benefitted from the funding provided by Appellant. As such,
this finding of fact was clearly erroneous and was contrary to the only evidence in
the record.[12]

---

[11] This testimony is in addition to the documentary evidence establishing that funds were
contributed by the Appellants. *See* ROA.1068 (transcript discussion of Trial Exhibit T-14, T-15,
T-16, and T-31.)

[12] As done in footnote 2, *supra*, (and relying upon the same case law cited therein) it is again worth
noting that this transaction stemmed from 2003, which was more than twenty (20) years ago,
hindering Appellant from obtaining then-available evidence on this point. To require Appellant
to provide more extensive evidence on this fact issue at present day reflects the fundamental
prejudice to Appellant with the unreasonable delay in objecting to and contesting the Settlement

## VI.  CONCLUSION

The Bankruptcy Court erred when it disallowed the Appellants' Proofs of Claim and denied Appellants' Post-Petition Applications. The District Court erred in affirming the Bankruptcy Court.  Accordingly, Appellants respectfully request that this Court REVERSE the Orders Granting Objection to and Disallowing Proofs of Claim  and the Orders Denying Application for Allowance and Payment of Post-Petition Claims for Royalties/Production Payments Pursuant to Agreement, REMAND this case to the Bankruptcy Court for entry  of an order allowing the Proofs of Claim and Post-Petition Applications and for a determination of the proper calculation of amounts for such claims, and for such other relief to which Appellants may be justly entitled at law or equity.

---

Agreement.  As such, the affirmative defenses of laches, estoppel, statute of limitations, and waiver would be applicable to any challenge to the validity and enforceability of the Settlement Agreements**.**

Dated: March 3, 2025

Respectfully submitted,

**STREUSAND, LANDON, OZBURN & LEMMON LLP**

By:   s/*Richard D. Villa*
Richard D. Villa
State Bar No. 24043974
Sabrina L. Streusand
State Bar No. 11701700
**STREUSAND, LANDON, OZBURN & LEMMON, LLP**
1801 S. MoPac Expressway, Suite 320
Austin, TX 78746
(512) 236-9900
(512) 236-9904 (Fax)
streusand@slollp.com
villa@slollp.com

**COUNSEL FOR APPELLANTS DALLAS WATER ALLIANCE ASSOCIATES, LTD. AND GREG ATTWOOD**

Kell C. Mercer, P.C.
901 S Mopac Expy, Bldg 1, Suite 300
Austin, Texas 78746
(512) 627-3512
(512) 597-0767 (fax)

By:   s/*Kell C. Mercer*
Kell C. Mercer
State Bar No. 24007668
kell.Mercer@mercer-law-pc.com

**ATTORNEY FOR APPELLANTS PAUL KELLER AND SHORELINE INVESTMENTS, LTD.**

-and-

C. DANIEL ROBERTS, P.C.
PO Box 300549
Austin, Texas 78703
Telephone: (512) 470-0897

By:   s/*C. Daniel Roberts*
C. Daniel Roberts
Texas Bar No.: 16999200
droberts@cdrlaw.net

**ATTORNEY FOR APPELLANT**
**FRANCIS R. REISSIG, Jr.**

## CERTIFICATE OF SERVICE

In compliance with Fed. R. App. P. 25, I certify that a true and correct copy of the foregoing was served when this brief was filed through the ECF system on the following parties:

Stephen W. Sather
BARRON & NEWBURGER, PC
7320 N MoPac Expressway, Suite 400
Austin, Texas 78731
Email: ssather@bn-lawyers.com

PLAN TRUSTEE AND SUBCHAPTER V TRUSTEE

Paul M. Terrill III
Ryan D. V. Greene
TERRILL & WALDROP
810 West 10th Street
Austin, Texas 78701
Email: pterrill@terrillwaldrop.com
Email: rgreene@terrillwaldrop.com

ATTORNEYS FOR BLUE WATER SYSTEMS, LP, BLUE
WATER VISTA RIDGE, LLC, and BLUE WATER 130 PROJECT, LP

Marvin E. Sprouse III
SPROUSE LAW FIRM
901 Mopac Expressway South
Building 1, Suite 300
Austin, TX 78746
Email: msprouse@sprousepllc.com

COUNSEL FOR AUSTIN JSB, LTD., FOX RIVER REAL ESTATE
HOLDINGS, INC., M. BUCKNER BACCUS, DANIEL T. COOPER,
ROSS M. CUMMINGS, WARREN DEMAIO, BRUCE F. DICKSON,
KEITH K. DICKSON, EUGENE A. FROST, JR., MARK A. FROST, AND
AUGUST J. PELLIZZI

s/*Richard D. Villa*
Richard D. Villa

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. and 5th Cir. R. 32(a)(7)(B) because this brief contains 7,046 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft© Word 2019 in 14-point TrueType© Times New Roman typeface.

Dated: March 3, 2025.

s/*Richard D. Villa*
Richard D. Villa

Attorney for Appellants,
Dallas Water Alliance
Associates, Ltd., and
Greg Attwood