# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of: Metropolitan Water Company, L.P., Debtor

Dallas Water Alliance Associates, Limited, Creditor; Keller Shoreline Investments, Limited; Paul Keller; Greg Attwood; Francis R. Reissig, Jr.,

> Appellants,

v.

Metropolitan Water Company, L.P., Debtor; Stephen W. Sather, Trustee; Blue Water Systems, L.P., Creditor; Blue Water Vista Ridge, L.L.C., Creditor; Austin JSB, Limited, Creditor; Fox River Real Estate Holdings, Incorporated, Creditor; M. Buckner Baccus, Creditor; Daniel T. Cooper, Creditor; Ross M. Cummings, Creditor; Warren Demaio, Creditor; Bruce F. Dickson, Creditor; Keith K. Dickson, Creditor; Eugene A. Frost, Jr., Creditor; Mark A. Frost, Creditor; August J. Pellizzi, Creditor,

> Appellees.

On Appeal from
the United States District Court
for the Western District of Texas, Austin Division

## REPLY BRIEF OF APPELLANTS

SUBMITTED BY:

**STREUSAND, LANDON, OZBURN**
**& LEMMON LLP**

Richard D. Villa
State Bar No. 24043974
Sabrina L. Streusand
State Bar No. 11701700
1801 S. MoPac Expressway, Suite 320
Austin, TX 78746
(512) 236-9900
(512) 236-9904 (Fax)
streusand@slollp.com
villa@slollp.com

**COUNSEL FOR APPELLANTS DALLAS WATER ALLIANCE**
**ASSOCIATES, LTD. AND GREG ATTWOOD**

Kell C. Mercer
State Bar No. 24007668
kell.Mercer@mercer-law-pc.com
Kell C. Mercer, P.C.
901 S Mopac Expy, Bldg 1, Suite 300
Austin, Texas 78746
(512) 627-3512
(512) 597-0767 (fax)

**ATTORNEY FOR APPELLANTS PAUL KELLER AND KELLER**
**SHORELINE INVESTMENTS, LTD.**

C. Daniel Roberts
Texas Bar No.: 16999200
C. DANIEL ROBERTS, P.C.
PO Box 300549
Austin, Texas 78702
Telephone: (512) 470-0897
droberts@cdrlaw.net

**ATTORNEY FOR APPELLANT FRANCIS R. REISSIG, JR**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ ii

I.    REPLY ARGUMENT ................................................................1

    A.    Parol evidence cannot be received in an effort to create
          an ambiguity. .....................................................................................2

    B.    Appellees erroneously focus on just one provision, the
          introductory sentence with the definition of "Parties," to conclude
          that MetWater is not bound by the Settlement Agreements. ..............3

    C.    Third parties who sign contracts are legally bound. ...........................5

    D.    Taken as a whole, the Settlement Agreements establish that
          MetWater is bound by, and has payment obligations under, the
          Settlement Agreements. ....................................................................8

    E.    The Settlement Agreements are not irreconcilably inconsistent
          and thus not ambiguous..................................................................14

II.    CONCLUSION.........................................................................20

CERTIFICATE OF COMPLIANCE..................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*780 LLC v. DiPrima*, 611 N.W.2d 637 (Neb. Ct. App. 2000)................................18

*Am. Chain Co. v. Arrow Grip Mfg. Co.*, 134 Misc. 321,
   235 N.Y.S. 228 (Sup. Ct. 1929)..............................................................5

*Bank of Am., N.A. as Tr. of Florence Thelma Hall Testamentary Tr. v. Devon
   Energy Prod. Co., L.P.*, No. 4:15-CV-38-DAE, 2017 WL 11001832
   (W.D. Tex. July 11, 2017) ...................................................................15

*Bank of New York Mellon v. Rhiel*, 2018-Ohio-5087,
   155 Ohio St. 3d 558, 122 N.E.3d 1219 (Ohio 2018).........................................5, 6

*Carson v. Nat'l Life Ins. Co.*, 161 N.C. 441, 77 S.E. 353, 354 (1913) .....................6

*Essex Ins. Co. v. Cordillera Ranch Prop. Owners Ass'n, Inc.*, No.
   SA-08-CA-605-OG, 2009 WL 10669892 (W.D. Tex. Oct. 15, 2009).......... 14, 16

*Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734 (N.D. Tex. 2014).............4

*Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445 (Tex. 2015).........................11

*Marriott Int'l, Inc. v. deCelle*, 722 So.2d 760 (Ala. 1998).....................................18

*Perkins v. Goodman*, 1855 WL 6628 (N.Y. Gen. Term. 1855)................................6

*Prospect Energy Corp. v. Dallas Gas Partners, LP*, No. CIV.A. H-10-1396,
   2011 WL 843908 (S.D. Tex. Mar. 8, 2011), aff'd sub nom.,
   *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148
   (5th Cir. 2013)........................................................................................8

*Reliant Energy Services, Inc. v. Enron Canada Corp.*,
   349 F.3d 816, 823 (5th Cir. 2003) .........................................................8

*Sunwest Operating Co., L.L.C. v. Classic Oil & Gas, Inc.*,
   303 F. Supp. 2d 827 (E.D. Tex. 2004)..................................................15

*Texas, v. American Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006)...................2, 3

*Thomas v. Gumaer & Allen*, 1831 WL 3031 (N.Y. Sup. Ct. 1831) ........................6

*Transitional Learning Cmty at Galveston, Inc. v. United States Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir.2000) ............................................................12

*T-Rex Prop. AB v. Regal Ent. Grp.*, No. 6:16-CV-927-JDK-KNM, 2019 WL 4935310, at *3 (E.D. Tex. Sept. 12, 2019) ...........................................................15

**Other**

Black's Law Dictionary ...........................................................................................13

Merriam-Webster ...................................................................................................13

# I.   <u>REPLY ARGUMENT</u>

This is a contract interpretation case in which the analysis of whether the Settlement Agreements (ROA 3568-74; 3575-81) are ambiguous is confined to the four-corners of the instrument. In the Brief of Appellees, however, Appellees largely ignore the language of the Settlement Agreements and spend signification portions of their Brief dedicated to presenting disputed factual arguments outside the four corners of such agreements to push their interpretation of the Settlement Agreements.[1] However, when reviewing the actual language of the Settlement

---

[1]     Despite that the issues on appeal relate purely to legal issues of contract interpretation, the Appellees spend the first fifteen pages of their brief providing a recitation of purported facts in an apparent attempt to distract from the issues of contract construction to which this appeal relates. Indeed, many of the purported facts set forth by Appellees are inaccurate or mischaracterizations, serving merely to obfuscate the issues. For example, on pages 2-3 of Appellees' Brief, Appellees engage in a character assassination of Scott Carlson – who is not even a party to this appeal but instead was a witness called by Appellants at the trial in support of the interpretation that MetWater was bound by the Settlement Agreements because Carlson executed the Settlement Agreements for both MetWater and MetWater Texas. Appellees claim Carlson has a history of fraud, forgery, and deceit, and they further state that Mr. Carlson was "removed" from control over the Debtor (MetWater) by the Bankruptcy Court giving the appearance that the Bankruptcy Court found wrongdoing on behalf of Mr. Carlson (again, a non-party to this appeal). It is not entirely clear why, for a contract interpretation case, the Appellees would assert such allegations against a non-party Scott Carlson, other than perhaps to give some false impression to the Court that any such alleged wrongdoings of Scott Carlson, if any, should be imputed to the Appellants by virtue of having called him as a witness at the trial. In any event, these purported facts are not relevant to the four-corner analysis of the contractual interpretation issue at hand (For these assertions, Appellees do not even cite to the appellate record and instead cite to extraneous sources – see Appellees' Brief, fn. 1-3). As for Scott Carlson's alleged "removal," in actuality, the Plan was confirmed with the agreement of Met Water, with Scott Carlson agreeing to certain Plan modifications and clarifications suggested by the Bankruptcy Court in order to effectuate a consensual Plan, including Mr. Sather, as the appointed Chapter V Trustee, taking over financial and litigation management of Met Water for the five-year term of the Plan. [*See* Docket No. 468, page 2, Order Confirming SubChapter V Plan of Reorganization; *In re Metropolitan Water Company, LP*, Case No. 21-10903, United States Bankruptcy Court for the Western District of Texas, Austin Division]. In fact, even the Plan of Reorganization still provides for a budget that allocates $120,000 yearly management fee to Met Water Texas –

1

Agreements, the only reasonable interpretation to be drawn from the Settlement Agreements is that (i) MetWater was bound by the Settlement Agreements through its general partner, MetWater Texas, (ii) MetWater had obligations under the Settlement Agreements, and (iii) MetWater's obligation (shared with MetWater Texas) was to make, secure, and ensure that production payments were made to Appellants.

**A.     Parol evidence cannot be received in an effort to create an ambiguity.**

Appellees avoid tackling head-on the actual provisions of the Settlement Agreements and, instead, Appellees rely upon parol evidence and present an extensive and one-sided version of disputed background facts in an effort to give the appearance of an ambiguity in the interpretation of the Settlement Agreements.

As the Fifth Circuit and countless other courts have stated, the interpretation of a contract is confined to the four corners of the document, and parol evidence cannot be considered to create an ambiguity. *See, e.g., Texas, v. American Tobacco Co*., 463 F.3d 399, 407 (5th Cir. 2006) ("Courts interpreting unambiguous contracts are confined to the four corners of the document and cannot look to extrinsic evidence to create an ambiguity. Only after a contract is found to be ambiguous may

---

controlled by the very same Scott Carlson – for his work under the confirmed Plan.  [*Id*. at 28, para. 5.12.]

parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract.") (internal citations omitted).

Because the interpretation of the contract and the determination of whether the contract is ambiguous must be determined by the four corners of the contract itself, Appellants will refrain from responding to Appellees' one-sided self-serving factual recitation and will resist presenting other facts disputing Appellees' certain "facts" and, instead, Appellants will focus on the actual language in the Settlement Agreements to show that MetWater is liable for production payments under the Settlement Agreements.

**B.    Appellees erroneously focus on just one provision, the introductory sentence with the definition of "Parties," to conclude that MetWater is not bound by the Settlement Agreements.**

Appellees narrowly focus on just the introductory sentence of the Settlement Agreements defining "Parties" for the simple indisputable fact that MetWater is not identified as one of the parties constituting the definition of "Parties" under the Settlement Agreements.[2] This fact, however, is of no importance. The reason is that Appellants do not argue that all provisions applicable to those parties identified as

---

[2]    Appellees insistence on focusing upon just one provision of the Settlement Agreement violates established rules of contract construction. *See Texas, v. American Tobacco Co.*, 463 F.3d 399, 408 (5th Cir. 2006) ("Contracts are construed in their entirety and it is the Court's duty "to consider each part with every other part so that the effect and meaning of one part on any other part may be determined. Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract.") (internal citations omitted).

"Parties" under the Settlement Agreements are equally applicable to MetWater but only that, when specific provisions reference and obligate MetWater, then MetWater is obligated as expressed in those specific provisions of the Settlement Agreements.[3]

As such, the issue is not whether MetWater is within the defined term "Parties" but instead the issues are: (i) whether MetWater is bound by the Settlement Agreements pursuant to the Settlement Agreements' signature block indicating it is binding upon MetWater (which was signed by MetWater Texas, the general partner of MetWater, on behalf of MetWater), and (ii) the nature of MetWater's obligations under the Settlement Agreements considering the production payment provision in paragraph 1 of the Settlement Agreements indicates that production payments will be made, secured, and ensured by MetWater Texas for itself and on behalf of MetWater.

The Settlement Agreements' provisions and the signature block establish privity of contract[4] and that MetWater is bound by the Settlement Agreements with

---

[3]    For example, the audit provisions of the Settlement Agreements related solely to the Parties as defined therein to include the Appellants and MetWater Texas, but the payment provision and the anti-assignment provision include specific references to both MetWater and to MetWater Texas. (ROA 3568-74; 3575-81).

[4]    For clarity, although not required that MetWater be included within the term "Parties," MetWater still must have privity of contract to have obligations imposed upon it from the Settlement Agreements, and MetWater does have privity of contract by virtue of the signature block in which its general partner, MetWater Texas (the only entity with authority to act on behalf of MetWater), signed on behalf of MetWater and with such signature block expressly indicating that the Settlement Agreements would be binding upon MetWater. *See Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 739 (N.D. Tex. 2014) ("In Texas, a party generally must be a party to a contract before she can be held liable for a breach of that contract. As one

4

regard to production payments. There is no separate requirement that MetWater must also fit within the definition of "Parties" to be bound by, and have obligations arising from, the Settlement Agreements.

## C.     Third parties who sign contracts are legally bound.

The present case is akin to the line of authority from various jurisdictions that, where two parties enter into a contract, a third party who also signs the contract but who is not mentioned in the body of the instrument is also bound to the contract:[5]

- *Bank of New York Mellon v. Rhiel*, 2018-Ohio-5087, 155 Ohio St. 3d 558, 564, 122 N.E.3d 1219, 1226 (Ohio 2018) (addressing a situation in which a third party was not included within the definition of "Borrower" in a mortgage document, but the third party had also signed the mortgage document along with the Borrower, the court held: "Accordingly, a person who is not identified in the body of a mortgage but who signs and initials the mortgage is a mortgagor of his or her interest so long as the mortgage agreement as a whole evinces the person's intent to be bound through his or her signature.");

- *Am. Chain Co. v. Arrow Grip Mfg. Co.*, 134 Misc. 321, 324, 235 N.Y.S. 228, 232 (Sup. Ct. 1929) ("It seems to me that the failure to name all the guarantors in the body of the instrument is of no importance. It is not disputed that the guarantors affixed their names to the contract with the intention to sign the same. That being so, they thereby became parties to it and are bound by its provisions although not named in the body of the writing.");

---

federal court has noted, 'In Texas, it is an elementary rule of law that privity of contract is an essential element of recovery in an action based on a contractual theory.... Indeed, except for third-party beneficiary and tortious interference theories ... in order to maintain an action to recover for breach of contract, privity must exist between the party damaged and the party sought to be held liable.'" (quoting *Norris v. Housing Auth. of Galveston,* 980 F.Supp. 885, 892 (S.D.Tex.1997)).

[5]     Although our case is even stronger than this applicable case law because MetWater was mentioned twenty-three (23) times in each of the Settlement Agreements (for a total of 46 times in both Settlement Agreements). (ROA 3568-74; 3575-81)

- *Carson v. Nat'l Life Ins. Co.*, 161 N.C. 441, 77 S.E. 353, 354 (1913) ("As a general rule, one who subscribes his name to a written contract at the place usual for obligors in such a paper is bound by its terms as a written agreement, though his name may not so appear in the body of the instrument; the test being whether, on perusal of the entire instrument and without the aid of extrinsic evidence, it plainly appears that such signer intended to execute it and be bound by its terms.");

- *Perkins v. Goodman*, 1855 WL 6628 (N.Y. Gen. Term. 1855) ("His intention to be bound is manifest, from the fact of his signing as surety, with the other parties to the contract. He is therefore bound, although his name does not appear in the body of the contract.");

- *Thomas v. Gumaer & Allen*, 1831 WL 3031 (N.Y. Sup. Ct. 1831) (quoting headnote: "An agreement between two persons, perfect in all respects as between them as the sole contracting parties, was signed by them and a third person, who added the words "as security" to his name. The agreement concluded, "And for the faithful performance of the covenants and agreements above mentioned we bind ourselves to each other in the penal sum of $500." Held, that the third person, being the second signer, was the surety of the first signer, and was bound with him to perform the stipulations of the contract.").

In Appellee's Response Brief, pages 34-35, Appellees rely upon *Bank of New York Mellon v. Rhiel*, 122 N.E.3d at 1226, as if the Ohio Supreme Court declared an ambiguity and allowed the use of parol evidence, but Appellees fail to accurately present the nature and holding of this case. The case involved a certified question to the Ohio Supreme Court originating from the Bankruptcy Appellate Panel for the Sixth Circuit (and the underlying bankruptcy court found the agreement to be ambiguous and allowed parol evidence before the case went up on appeal). *Id.* at 1221. The certified question was whether an agreement was invalid and unenforceable against a person who initialed and signed the agreement but who was

not identified by name in the body of the agreement. *Id*. Notably, because it was a

certified question, the agreement was not before the Ohio Supreme Court for review

so the Ohio Supreme Court never declared the agreement as ambiguous nor did it

approve the use of parol evidence. *Id*. Instead, the Ohio Supreme Court made a series

of statements of law:

(i)     "Generally speaking, a contracting party's signature manifests the party's intent to be bound by a contract's terms." *Id*. at 1225;

(ii)    "If the identity of the party to be charged on a contract is unclear, it is the signature that 'fixes the actual identity of the party.'" *Id*.;

(iii)   "A party's intent to be bound does not begin and end with the signature. The meaning of a mortgage agreement, like any other contract, requires consideration of the contract as a whole." *Id*.;

(iv)    "Given the foregoing, a person's signature on a contract may potentially be sufficient evidence of the intent to be bound by the terms of a contract. Not being identified by name in the body of a contract does not, in itself, negate a signatory's intent to be bound by the contract. Accordingly, a person who is not identified in the body of a mortgage but who signs and initials the mortgage is a mortgagor of his or her interest as long as the mortgage agreement as a whole evinces the person's intent to be bound through his or her signature." *Id*. at 1226.

Admittedly, earlier in the opinion, the Ohio Supreme Court did make the

unremarkable and undisputed assertion in passing that, "in the event of an ambiguity,

parol evidence may be admissible to determine the signatory's intent." *Id*. at 1224.

But, thereafter, the Ohio Supreme Court focused on providing the above legal

principles regarding contract interpretation and the significance of a signature and

evincing the intent to be bound to the agreement as a response to the certified question before it.

In the present case, consistent with this line of authority from other jurisdictions, and consistent with the provisions of the Settlement Agreements, MetWater is the third party signing the instrument evincing the intent to be bound by the Settlement Agreement to make production payments as set forth therein.[6]

**D.    Taken as a whole, the Settlement Agreements establish that MetWater is bound by, and has payment obligations under, the Settlement Agreements.**

When reviewing the Settlement Agreements in their entirety, the only reasonable interpretation is that (i) MetWater was bound by the Settlement Agreements through its general partner, MetWater Texas, (ii) MetWater had obligations under the Settlement Agreements, and (iii) MetWater's obligation was to make, secure, and ensure that production payments were made to the Tightrope

---

[6]    Further, under well-established law, this obligation of MetWater is presumed to be joint liability in the absence of contractual language saying otherwise. *See Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 823 (5th Cir. 2003) ("As a general rule, an obligation entered into by more than one person is presumed to be joint.") (citing Williston on Contracts, § 36:3 at 621 (4th ed. 1999)); *see also Prospect Energy Corp. v. Dallas Gas Partners, LP*, No. CIV.A. H-10-1396, 2011 WL 843908, at *1 (S.D. Tex. Mar. 8, 2011), aff'd sub nom., *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148 (5th Cir. 2013) ("Historically, most jurisdictions follow the rule that an obligation entered into by more than one person is presumed to be joint. . . As expressed in the Restatement (Second) of Contracts, the rule is that where two or more parties to a contract promise the same performance to the same promissee, they incur only a joint duty unless an intention is manifested to create several duties or joint and several duties.") (citing 12 *Williston on Contracts* § 36:3 (4th ed.)).

Group parties, including Appellants. Appellees' Response Brief does little to address the applicable provisions under the Settlement Agreements.

First, Appellees' Response Brief does not address or offer any argument with regard to the Recital that clearly identifies MetWater Texas as the general partner of MetWater:

> "MWC [MetWater Texas] is MET's [Met Water's] sole and controlling general partner and MET [Met Water] pays and will continue to pay MWC [MetWater Texas] production payments for water produced from the Venture."

(ROA 3568-74; 3575-81). As such, the only reasonable interpretation of this Recital is that MetWater Texas is the sole and controlling general partner of MetWater with binding authority for MetWater.[7]

Second, and tellingly, Appellees almost entirely ignore the Settlement Agreements' signature blocks that include MetWater Texas signing on behalf of itself and on behalf of MetWater:

> "[MetWater Texas], for itself and on behalf of and binding upon [Met Water]."

(ROA 3568-74; 3575-81). The reason is simple: Appellees cannot offer, and have not offered, any alternative reasonable interpretation of these signature blocks,

---

[7]    Indeed, the Appellees ultimately stipulated at the trial that MetWater Texas would have the authority to execute the Settlement Agreements pursuant to MetWater's governing document entitled the Amended and Restated Agreement of Limited Partnership of Metropolitan Water Company, LP, which provides broad authority for the general partner (MetWater Texas) to act for MetWater. [July 31, 2023, Transcript, 15:16 to 16:24].

which explicitly indicate that MetWater is bound by the Settlement Agreements. Appellees' central argument is that MetWater is not bound by the Settlement Agreements, which is directly contrary to the express words in the signature blocks of the Settlement Agreements. Appellees' inability to explain or address the words in the signature blocks highlights the glaring flaw in Appellees' entire argument. There is no other reasonable interpretation of this signature block other than that the intent was to bind MetWater to the applicable obligations and terms under the Settlement Agreements.

Third, again Appellees' Response Brief barely addresses the anti-assignment provision in the Settlement Agreement that explicitly indicates that MetWater has obligations under the Settlement Agreements:

> "Any sale, transfer, or assignment by MET [MetWater] or MWC [MetWater Texas] of any of the MET Leases [MetWater Leases] or rights pertaining to the MET Leases [MetWater Leases] shall only be made if such sale, transfer, or assignment is made expressly subject to the rights of [the Tightrope Group] to the Production Payments and with such buyer, assignee, and/or transferee assuming *the obligations of MET [MetWater]* and MWC [MetWater Texas] *under this Agreement*."

(ROA 3568-74; 3575-81) (italics added for emphasis). As stated in Appellant's initial Brief, the only reasonable interpretation of this provision – which requires that any assignment of the MetWater Leases to a third party shall require the third party to assume the obligations of MetWater under the Settlement Agreements – is that MetWater must have obligations under the Settlement Agreements to be

assumed. Otherwise, this language would be superfluous and meaningless. But in an absolute, total avoidance of any interpretative analysis, Appellees' Response Brief acknowledges this express language but then simply just summarily dismisses the idea that MetWater has any obligation: "Of course, merely saying MetWater's obligations (if any) would be assumed in Section 1 does not mean MetWater has any obligation to [Appellants] in the first place . . ." *See* APPELLEES' RESPONSE BRIEF, p. 24. In other words, in its bare essence, Appellees are arguing that the express language (i.e., that MetWater has obligations under the Settlement Agreement) should just be ignored as superfluous and meaningless.[8]

Fourth, despite the payment production paragraph expressly including MetWater as also having the payment obligation:

> "MWC [MetWater Texas] for itself and as general partner on behalf of MET [MetWater] will make or secure and ensure the grant of, production payments for water produced and sold . . . from any and all MET Leases [Met Water's Leases] . . ."

(ROA 3568-74; 3575-81), Appellees' Response Brief simply concludes (without any attempt to parse the actual words of the contract language) that the payment obligation contained in the payment production paragraph is "narrowly defined" to impose the payment obligation on just MetWater Texas. *See* APPELLEES' RESPONSE

---

[8]    Appellees' effort to summarily dismiss the express language as meaningless and superfluous violates established rules of contract construction. *See Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) ("When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless.").

BRIEF, p. 22. But the language is not limited to just MetWater Texas having such payment obligation, but also includes MetWater with the inclusion of the language that "[MetWater Texas] for itself and as general partner on behalf of [MetWater]." If the payment obligation will be fulfilled by MetWater Texas for itself and also "on behalf of [MetWater]," then MetWater must also jointly have the payment obligation.[9] This additional language is not merely superfluous and meaningless (otherwise it would have been completely unnecessary to include such language in the Settlement Agreements).[10] Appellees' interpretation that solely MetWater Texas is the obligated party is inconsistent with, and wholly ignores, the express words in the Settlement Agreements.

Fifth, Appellees' Response Brief does not address the argument that the payment language in the first paragraph of the Settlement Agreements is not just limited to making production payments but also includes language such as securing and ensuring the grant of production payments ("make, *or secure and ensure* the grant of production payments," (ROA 3568-74; 3575-81) (emphasis added). Thus, in addition to a direct payment obligation, this language reflects a secondary

---

[9]    *See*, *supra*, fn. 6 for a discussion regarding the presumption of MetWater's joint liability.

[10]   *See Transitional Learning Cmty at Galveston, Inc. v. United States Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir.2000) ("[A] contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose and that none are deemed superfluous.").

obligation (such as a guarantee) that such production payments will be made,[11] supporting the interpretation that MetWater would likewise be obligated for the production payments (for instance, in the event that MetWater Texas failed to make the production payments). Despite Appellant's initial Brief expressly making reference to this secondary-obligation language as support for its interpretation that MetWater is also obligated for the production payments, Appellees' Response Brief wholly ignores this secondary-obligation language in the payment provision of the Settlement Agreements.

Consequently, when reviewing the entire agreement and interpretating these provisions harmoniously, and not simply ignoring words and provisions as meaningless and superfluous, the only reasonable interpretation to be drawn from the Settlement Agreements is that (i) MetWater was bound by the Settlement Agreements through its general partner, MetWater Texas, (ii) MetWater had obligations under the Settlement Agreements, and (iii) MetWater's obligation (shared with MetWater Texas) was to make, secure, and ensure that production payments were made to Appellants.

---

[11] *See* Black's Law Dictionary p. 1066 (Second Edition) (defining "Secure" as to assure payment, performance or indemnity; to guaranty to make certain the payment of a debt) (citing *Pennell v. Rhodes*. 9 Q. B. 114: *Ex parte Reynolds*. 52 Ark. 330, 12 S. W. 570: *Foot v. Wehh*, 55 Barb. (N. Y.) 52); *see also* Merriam-Webster (defining "Ensure" as to make sure, certain, or safe: Guarantee).

**E.    The Settlement Agreements are not irreconcilably inconsistent and thus
not ambiguous.**

Instead of addressing the entirety of the Settlement Agreements – which can
be harmoniously interpreted such that MetWater is bound by the Settlement
Agreements – Appellees continue to narrowly focus on just the introductory
sentence with the definition of "Parties" not including MetWater and the signature
block indicating that such Settlement Agreements are binding on MetWater, to
advocate for an over-simplified interpretation of case law that any apparent surface-
level conflict in the Settlement Agreements automatically results in such agreements
being deemed ambiguous. Appellees, however, disregard the wealth of legal
authority in Texas that only an *irreconcilable* conflict results in an ambiguity:

> "Even where different parts of the instrument appear to be
> contradictory and inconsistent with each other, the court will, [i]f
> possible, harmonize the parts and construe the instrument in such
> [a] way that all parts may stand and will not strike down any portion
> unless there is an irreconcilable conflict wherein one part of the
> instrument destroys in effect another part."

*Essex Ins. Co. v. Cordillera Ranch Prop. Owners Ass'n, Inc.*, No. SA-08-CA-605-
OG, 2009 WL 10669892, at *8 (W.D. Tex. Oct. 15, 2009) quoting *Woods v. Sims*,
154 Tex. 59, 273 S.W.2d 617, 620-21 (1954).

Pursuant to well-established rules of construction, a court must harmonize all
parts of a contract, and it must interpret the contract in a way, if at all possible, to
give effect to all terms of the contract so that none is rendered meaningless, even if

different parts of the contract appear contradictory or inconsistent. *See, e.g, Bank of Am., N.A. as Tr. of Florence Thelma Hall Testamentary Tr. v. Devon Energy Prod. Co., L.P.*, No. 4:15-CV-38-DAE, 2017 WL 11001832, at *4 (W.D. Tex. July 11, 2017) ("A court examines the entire lease and attempts to harmonize all of its parts, *even if different parts appear contradictory or inconsistent*, and the court presumes that the parties to a lease intended every clause to have some effect. Thus, a court attempts to give effect to all the provisions of the lease so that no provision will be rendered meaningless.") (emphasis added); *Sunwest Operating Co., L.L.C. v. Classic Oil & Gas, Inc.*, 303 F. Supp. 2d 827, 831 (E.D. Tex. 2004) ("*Even if different parts of the deed appear contradictory or inconsistent*, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions.") (emphasis added).

In the face of an apparent conflict or inconsistency, if there exists an interpretation that gives effect to all provisions and does not render any meaningless, then such interpretation is the only "reasonable" interpretation, and such interpretation shall prevail. *See T-Rex Prop. AB v. Regal Ent. Grp*., No. 6:16-CV-927-JDK-KNM, 2019 WL 4935310, at *3 (E.D. Tex. Sept. 12, 2019), report and recommendation adopted, No. 6:16-CV-927-JDK-KNM, 2019 WL 5558061 (E.D. Tex. Oct. 29, 2019) ("Thus, a court's construction should attempt to harmonize all

provisions of the contract, and should not dismiss any provisions as inconsistent if there exists a reasonable interpretation that gives effect to both.”).

It is only when there is an inescapable conflict or inconsistency – meaning “wherein one part of the instrument destroys in effect another part” – that cannot be harmonized by either interpretation, then there is no one, clear reasonable interpretation that prevails. *See Essex Ins. Co. v. Cordillera Ranch Prop. Owners Ass'n, Inc.*, No. SA-08-CA-605-OG, 2009 WL 10669892, at *8 (W.D. Tex. Oct. 15, 2009) quoting *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620-21 (1954) (“Even where different parts of the instrument appear to be contradictory and inconsistent with each other, the court will, [i]f possible, harmonize the parts and construe the instrument in such [a] way that all parts may stand and will not strike down any portion unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part.”)).

Similarly, as illustrated by this Circuit in addressing arguably inconsistent provisions in an agreement, courts should not hastily conclude that provisions are inconsistent and ambiguous but, instead, courts should first seek to interpret such agreements harmoniously, giving effect to all provisions, if possible. *See Davis v. EGL Eagle Glob. Logistics L.P.*, 243 F. App'x 39, 44–45 (5th Cir. 2007).

In *Davis*, one party argued that an arbitration provision and two separate notice provisions providing for different notice periods were inconsistent and

ambiguous, while the other party argued that all the provisions could be interpreted harmoniously and consistently. *Id*. In short, the Fifth Circuit rejected the interpretation resulting in inconsistencies and, instead, held that there was only one "reasonable" interpretation and no inconsistency:

> In Davis's second argument, he contends that the arbitration provision of the Agreement is unenforceable due to ambiguities and inconsistencies in the Agreement. First, Davis contends that Section 6.07 of the Agreement, the arbitration provision, conflicts with Appendix II of the Agreement, which lists deductions from Davis's compensation. . . Contrary to Davis's assessment, we find only one reasonable interpretation and no inconsistency. Therefore, we conclude that no ambiguity or inconsistency exists between these two provisions.
>
> Second, Davis alleges that the Agreement contains ambiguous and inconsistent notification requirements.…Again, we conclude that only a single reasonable interpretation exists for these two provisions.…Given that there is only one reasonable interpretation of the Agreement and that its provisions do not conflict, we hold that Davis has not shown any ambiguity or inconsistency in the Agreement.

*Id*. In essence, this Circuit adopted the only "reasonable" interpretation that avoided a conflict or inconsistency and that, instead, resulted in a harmonious reading of all the contract provisions.

Accordingly, courts seek an interpretation that harmonizes all the provisions and, it is only when there is an inescapable conflict or inconsistency – meaning "wherein one part of the instrument destroys in effect another part" – that cannot be

harmonized by either parties' interpretation of the document, then there is no one, clear reasonable interpretation that prevails.

Consequently, the Appellees' reliance upon *Marriott Int'l, Inc. v. deCelle*, 722 So.2d 760 (Ala. 1998) and *780 LLC v. DiPrima*, 611 N.W.2d 637 (Neb. Ct. App. 2000) on page 34 of Appellees' Response Brief is misplaced because, in those cases, there clearly was an inescapable inconsistency regardless of the competing interpretations. The question in those cases specifically was which party was liable (the principal/company or the agent/individual), which was a binary question where just one party could be liable but not both, and the agreements in those cases were inconsistent because one provision identified just the principal was liable and another provision identified just the agent was liable. Thus, there was an irreconcilable conflict (i.e., "an irreconcilable conflict wherein one part of the instrument destroys in effect another part") and, thus, an ambiguity. *Marriott,* 722 So.2d at 762-63; *780 LLC*, 611 N.W.2d at 643-45.

That is entirely different from our case because, here, there is no such irreconcilable conflict. First of all, in the present case, it is not a binary question (i.e., either principal or agent as a liable party) because both parties (MetWater and MetWater Texas) are liable – there is no question that MetWater Texas (the agent of MetWater as the general partner) is a party to and is bound by the Settlement Agreement regardless of whether MetWater is also bound. That is clearly established

and is not in dispute. The question is whether MetWater (the principal) is also bound in addition to MetWater Texas. And this question is answered by the signature block clearly indicating that the Settlement Agreement is also binding upon MetWater (among other provisions in the Settlement Agreement). Unlike the *Marriott* and *780 LLC* cases where there was an inconsistency because only one of the parties could be liable (an "either/or" scenario), there is nothing inconsistent with the notion that both MetWater and MetWater Texas can be bound by the Settlement Agreements pursuant to the signature block. It is not an inconsistency,[12] but a mere supplementation, of which entities may be bound because MetWater being bound by the Settlement Agreement by one part of the instrument does not "destroy in effect another part" of the instrument that also binds MetWater Texas to the Settlement Agreement. Both can be liable, and all provisions can harmoniously be interpreted in a manner providing that both MetWater Texas and MetWater are bound to the Settlement Agreement.

Under the express terms of the Settlement Agreements, when reviewing the signature blocks for the Settlement Agreements expressly stating they are binding upon MetWater (which was signed by MetWater Texas, the general partner of

---

[12] For clarity, there is nothing inconsistent in the Settlement Agreement as to whether MetWater is bound to make production payments. There are clear provisions throughout the Settlement Agreements (in the recitals, in the payment provisions and in the signature block) that are applicable to MetWater having such obligation, and nowhere in the Settlement Agreements does it express that MetWater is not bound by the Settlement Agreements. In fact, the signature block expressly indicates that MetWater is bound, and there is nothing inconsistent with MetWater being bound to making production payments.

MetWater, expressly on behalf of MetWater), and in light of the production payment provision in paragraph 1 of the Settlement Agreements which provides that production payments will be made, secured, and ensured by MetWater Texas for itself and *on behalf of MetWater*, the only reasonable interpretation is that MetWater is clearly bound by the Settlement Agreements.

## II.    CONCLUSION

The Settlement Agreements' provisions and the signature block conclusively establish privity of contract and that MetWater was intended to be and is bound by the Settlement Agreements, particularly with regard to the production payments to be paid to Appellants.

Accordingly, Appellants Dallas Water Alliance Associates, Ltd., Greg Attwood, Paul Keller, Keller Shoreline Investments, Ltd., and Francis R. Reissig, Jr. respectfully request that this Court REVERSE the Orders Granting Objections to and Disallowing Proofs of Claim No. 10 of Dallas Water Alliance (Bankr. Docs. 799, 800, and 801) and the Order Denying Application for Allowance and Payment of Post-Petition Claims for Royalties/Production Payments Pursuant to Agreement Filed by Dallas Water Alliance Associates, Ltd." (Bankr. Docs. 808), REVERSE the Orders Granting Objection to and Disallowing Proofs of Claim No. 8 and 9 of Keller and KSI, respectively and the Order Denying Application for Allowance and Payment of Post-Petition Claims for Royalties/Production Payments Pursuant to

Agreement Filed by Keller and KSI, REVERSE the Orders Granting Objection to and Disallowing Proof of Claim No. 13 of Reissig and the Order Denying Application for Allowance and Payment of Post-Petition Claim for Royalties/Production Payments Pursuant to Agreement filed by Reissig, and remand this case to the Bankruptcy Court for entry of an order allowing the Proofs of Claim and granting the Applications and for a determination of the amounts for such claims, and for such other relief to which they may be justly entitled at law or equity.

Dated: May 7, 2025

Respectfully submitted,

**STREUSAND, LANDON, OZBURN & LEMMON LLP**

By: _/s/ Richard D. Villa_
    Richard D. Villa
    State Bar No. 24043974
    Sabrina L. Streusand
    State Bar No. 11701700
    1801 S. MoPac Expressway, Suite 320
    Austin, TX 78746
    (512) 236-9900
    (512) 236-9904 (Fax)
    streusand@slollp.com
    villa@slollp.com

**COUNSEL FOR APPELLANTS DALLAS WATER ALLIANCE ASSOCIATES, LTD. AND GREG ATTWOOD**

**KELL C. MERCER, P.C.**

By:  */s/ Kell C. Mercer*
    Kell C. Mercer
    State Bar No. 24007668
    kell.Mercer@mercer-law-pc.com
    901 S Mopac Expy, Bldg 1, Suite 300
    Austin, Texas 78746
    (512) 627-3512
    (512) 597-0767 (fax)

**ATTORNEY FOR APPELLANTS PAUL
KELLER AND KELLER SHORELINE
INVESTMENTS, LTD.**

-and-

**C. DANIEL ROBERTS, P.C.**

By:  */s/ C. Daniel Roberts*
    C. Daniel Roberts
    Texas Bar No.: 16999200
    droberts@cdrlaw.net
    PO Box 300549
    Austin, Texas 78703
    Telephone: (512) 470-0897

**ATTORNEY FOR APPELLANT
FRANCIS R. REISSIG, JR.**

<u>**CERTIFICATE OF SERVICE**</u>

In compliance with Fed. R. App. P. 25, I certify that a true and correct copy of the foregoing was served when this brief was filed through the ECF system on the following parties:

Stephen W. Sather
BARRON & NEWBURGER, PC
7320 N MoPac Expressway, Suite 400
Austin, Texas 78731
Email: ssather@bn-lawyers.com

PLAN TRUSTEE AND SUBCHAPTER V TRUSTEE

Paul M. Terrill III
Ryan D. V. Greene
TERRILL & WALDROP
810 West 10th Street
Austin, Texas 78701
Email: pterrill@terrillwaldrop.com
Email: rgreene@terrillwaldrop.com

ATTORNEYS FOR BLUE WATER SYSTEMS, LP, BLUE
WATER VISTA RIDGE, LLC, and BLUE WATER 130 PROJECT, LP

Marvin E. Sprouse III
SPROUSE LAW FIRM
901 Mopac Expressway South
Building 1, Suite 300
Austin, TX 78746
Email: msprouse@sprousepllc.com

COUNSEL FOR AUSTIN JSB, LTD., FOX RIVER REAL ESTATE
HOLDINGS, INC., M. BUCKNER BACCUS, DANIEL T. COOPER,
ROSS M. CUMMINGS, WARREN DEMAIO, BRUCE F. DICKSON,
KEITH K. DICKSON, EUGENE A. FROST, JR., MARK A. FROST, AND
AUGUST J. PELLIZZI

*/s/ Richard D. Villa*
Richard D. Villa

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. and 5th Cir. R. 32(a)(7)(B) because this brief contains 5,730 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft© Word 2019 in 14-point TrueType© Times New Roman typeface.

Dated: May 7, 2025

*/s/ Richard D. Villa*
Richard D. Villa

Attorney for Appellants, Dallas Water
Alliance Associates, Ltd., and
Greg Attwood